An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1093

Filed 15 October 2025

Graham County, No. 19CRS000157-370

STATE OF NORTH CAROLINA

v.

MICHAEL LEE WHITE

Appeal by defendant from judgment entered 8 May 2024 by Judge Lisa C. Bell in Graham County Superior Court. Heard in the Court of Appeals 12 August 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General John F. Oates, Jr., for the State.*

> *Appellate Defender Glenn Gerding, by Deputy Appellate Defender Katherine Jane Allen, for defendant-appellant.*

ZACHARY, Judge.

Defendant Michael Lee White appeals from the trial court's judgment entered upon a jury's verdict finding him guilty of statutory sex offense with a child by an adult. On appeal, Defendant argues that the trial court erred by denying his motion for a mistrial. After careful review, we conclude that Defendant is entitled to a new trial.

This matter first came on for jury trial in 2015. At the conclusion of the trial, the jury returned a guilty verdict. The trial court sentenced Defendant to a term of 300 to 369 months' imprisonment in the custody of the North Carolina Division of Adult Correction. This Court affirmed the judgment in *State v. White*, 256 N.C. App. 164, 805 S.E.2d 563, 2017 WL 4638188 (2017) (unpublished). Defendant petitioned our Supreme Court for discretionary review; the Supreme Court allowed the petition, and reversed and remanded the case with instructions to vacate the trial court's judgment. *See State v. White*, 372 N.C. 248, 256, 827 S.E.2d 80, 85 (2019).

On 6 May 2024, Defendant's case again came on for jury trial in Graham County Superior Court. On 8 May 2024, the jury returned its verdict finding Defendant guilty. That same day, the trial court entered judgment sentencing Defendant to a term of 300 to 369 months' imprisonment in the custody of the North Carolina Department of Adult Correction.[1] The court also entered an order requiring Defendant to register as a sex offender and subjecting Defendant to satellite-based monitoring for life.

Defendant entered oral notice of appeal.

Defendant argues that "[t]he trial court abused its discretion and reversibly

---

[1] We note that the trial court's judgment contains a clerical error—Defendant's conviction was mistakenly ascribed to a violation of N.C. Gen. Stat. § 14-27.4(A)(1) rather than N.C. Gen. Stat. § 14-27.28. The error did not affect Defendant's sentence, as the offense and felony class stated in the judgment are correct; the only error is to the section due to the recodification of our General Statutes. While we would typically remand this matter to the trial court for the limited purpose of correcting the clerical error in the judgment, we decline to do so now in light of our disposition.

erred in doing so by denying [his] motion for a mistrial during jury selection." We agree.

The trial court "must declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case." N.C. Gen. Stat. § 15A-1061 (2023).

"The determination as to whether substantial and irreparable prejudice has occurred lies within the sound discretion of the trial judge and will not be disturbed on appeal absent a showing of abuse of discretion." *State v. McNeill*, 371 N.C. 198, 248, 813 S.E.2d 797, 829 (2018) (cleaned up), *cert. denied*, 586 U.S. 1209, 203 L. Ed. 2d 417 (2019). "An abuse of discretion occurs when a ruling is manifestly unsupported by reason, which is to say it is so arbitrary that it could not have been the result of a reasoned decision." *State v. Taylor*, 362 N.C. 514, 538, 669 S.E.2d 239, 260 (2008) (cleaned up), *cert. denied*, 558 U.S. 851, 175 L. Ed. 2d 84 (2009).

Defendant argues that the trial court abused its discretion "by denying [his] motion for a mistrial during jury selection after a prospective juror announced to all other prospective jurors that she was familiar with [him] because she was a detention officer at the facility where [he] was incarcerated." Defendant contends that the court's ruling on this matter constituted "reversibly prejudicial" error. The State concedes that "[a] statement from a prospective juror involved in law enforcement or the detention process that references familiarity with the defendant is improper" but

nevertheless asserts that "[D]efendant has not shown substantial and irreparable prejudice to his right to a fair trial."

This Court has long viewed such cases with concern. "Because people assume (often incorrectly) that those with a criminal history are more likely to commit future crimes, knowledge that a defendant has a criminal past poses a significant risk of prejudice." *State v. Lynch*, 254 N.C. App. 334, 338, 803 S.E.2d 190, 193 (2017). "Indeed, it is precisely because of these concerns that the Rules of Evidence restrict the State's ability to inform jurors of a defendant's criminal history or prior bad acts." *Id.*

In *State v. Bruer*, this Court concluded that there was "obvious prejudice" to a defendant's right to a fair trial when "a prospective juror who was employed in the criminal justice system . . . made a statement during jury selection that he knew [the d]efendant from when [the d]efendant was in prison." 294 N.C. App. 442, 448, 903 S.E.2d 387, 392 (2024) (citation omitted). We observed that "evidence of incarceration may, in fact, be more prejudicial than evidence of a conviction where, as here, the jury is left to speculate as to the seriousness of the offense and the length of the sentence." *Id.* (cleaned up).

Yet, in *Bruer*, this Court did not hold that such statements were prejudicial per se. Rather, this Court left undisturbed its precedent delineating a suitable response to such statements during jury selection:

> [W]here inappropriate answers are given or comments

made by a prospective juror during the jury selection process, the trial court should make an inquiry of all jurors, both accepted and prospective, to determine whether they heard the statements, the effect of such statements on them, and whether they could disabuse their minds of the harmful effects of the prejudicial comments.

*State v. Howard*, 133 N.C. App. 614, 619, 515 S.E.2d 740, 743 (1999).

Here, during jury selection, the trial court asked prospective jurors if they knew Defendant. One member of the jury pool stated: "I was a detention officer when he was incarcerated for quite a while." The court excused the individual and simply proceeded as before, without polling the other prospective jurors regarding the statement or delivering a curative instruction. Although Defendant did not request that the court question the jury pool, during a break in the proceedings, defense counsel moved for a mistrial.

After hearing from both attorneys, the trial court denied Defendant's motion and declined to deliver a curative instruction, explaining:

> Well, it's one of those situations that the comments are made. And I'm sure your ears perked up. I know your ears perked. My ears perked up. But for me to address it in the sense of giving any type of cautionary curative instruction then brings everybody's attention to it. And, honestly, the jury pool may not have really been paying attention.
>
> We hear it because we know [Defendant]'s history from this case and that he was incarcerated as a result of the history. But the jury pool doesn't know that. And so we hear it and hear, oh, they're talking about that or [the prospective juror] was talking about that.

> But she was a detention officer. I'm assuming she wasn't with the prison system. I'm assuming she was with the jail, and that would have been a pretrial situation, not a post-conviction situation.

In the instant case, as in *Bruer*—and despite the court's best intentions—the trial court "failed to make an inquiry of all jurors, both accepted and prospective[,] to determine whether they heard [the detention officer]'s statement"; "failed to determine the effect of such a statement on them, and whether they could disabuse their minds of the harmful effects of the prejudicial comments"; and "failed to determine that [the detention officer]'s statement was so minimally prejudicial that the members of the jury might reasonably be expected to disregard it and render a fair and impartial verdict." *Bruer*, 294 N.C. App. at 448, 903 S.E.2d at 392 (cleaned up).

Accordingly, the trial court abused its discretion by denying Defendant's motion for a mistrial, and Defendant is entitled to a new trial.

NEW TRIAL.

Judge HAMPSON concurs.

Judge MURRY dissents by separate opinion.

Report per Rule 30(e).

MURRY, Judge, dissenting.

Defendant argues the trial court erred by failing to grant his motion for a mistrial after a prospective juror stated, in front of the venire, that she knew Defendant from her employment as a detention officer where Defendant had been previously incarcerated. This case requires this Court to determine whether such a comment constitutes *per se* error, as the majority concludes, or whether prejudice must instead be evaluated in light of the entire record. Here, after thoughtful consideration and consultation with counsel, the trial court determined that highlighting the issue with a curative instruction would have risked amplifying, rather than reducing, any prejudice. While I agree with the majority that the trial court erred in failing to give a curative instruction, I respectfully disagree with the conclusion that this error requires a new trial. The question is not whether the remark was improper, but whether it substantially and irreparably prejudiced the fundamental fairness of Defendant's trial.

Our precedent makes clear that not every prejudicial remark by a prospective juror compels reversal. In *State v. Lynch*, 254 N.C. App. 334, 336 (2017), this Court emphasized that the touchstone is whether juror remarks produce substantial and irreparable prejudice. That test necessarily requires consideration of the trial court's response and the strength of the State's evidence. *See State v. Taylor*, 362 N.C. 514,

541 (2008) (jury prejudice assessed against evidence as a whole). In *Lynch*, although a juror stated during voir dire, "I believe she did it," this Court held that no mistrial was required because the trial court provided curative instructions and the trial proceeded fairly. *Lynch*, 254 N.C. App. at 337.

Our precedent also recognizes that trial judges are best positioned to evaluate juror bias and whether prejudice can be cured. In *State v. Carr*, 229 N.C. App. 579, 581–83 (2013), this Court rejected a claim that a juror's initial statements about "loopholes" required removal for cause, explaining that appellate courts are *required* to defer to the trial court's judgment concerning juror impartiality. The principle from *Carr* underscores that determinations of prejudice turn on context, the trial court's handling of the remark, and whether the record as a whole supports a fair trial. By contrast, in *State v. Bruer*, 294 N.C. App. 442, 445 (2024), this Court greatly extended *Lynch* and granted a new trial where a prison guard on the venire told the jury pool that he knew the defendant from prison. The *Bruer* Court concluded that the remark was inherently prejudicial because it informed the jury pool of the defendant's unrelated prior incarceration, and the trial court failed to give a curative instruction. *See id.* at 447.

The majority applies *Bruer* to grant Defendant a new trial.[1] I would decline to extend the case so far as to require a new trial in light of a corroborated confession. Unlike the venire in *Bruer*, this venire was not left to speculate about Defendant's prior record or consider whether credibility was the central issue. Here, Defendant provided a written confession, corroborated by other evidence, in which he admitted "sticking his pinkie finger in the vagina of the seven-year-old victim" and repeatedly expressed remorse. The majority opinion recounts in detail the evidence corroborating Defendant's confession. For the purposes of this dissent, I do not repeat that detailed recitation.

Our Supreme Court recognized that a defendant's voluntary and corroborated confession must be supported by competent corroborating evidence. *See State v. Smith*, 362 N.C. 583, 592 (2008). North Carolina has joined the national trend by expanding the *corpus delicti* rule to allow a defendant's extrajudicial confession to sustain a conviction when the trustworthiness of the confession is substantiated by *evidence aliunde. Id.* (citing *State v. Parker*, 315 N.C. 222 (1985)). This confession was clear, unequivocal, and corroborated by other trial evidence, obviating credibility concerns. Assuming the detention officer's remark created some degree of prejudice, it cannot overcome the weight of Defendant's own words.

---

[1]     The majority here relies heavily on *Bruer*. But unlike *Lynch*, where prejudice is assessed in context, the *Bruer* panel placed weight on credibility as the central issue. Here, Defendant's confession obviated the centrality of credibility, rendering any juror remark less significant.

Whether to grant a motion for mistrial rests within the sound discretion of the trial judge and will not ordinarily be disturbed on appeal absent a showing of abuse of that discretion. *Lynch*, 254 N.C. App. at 336 (citing *State v. Boyd*, 321 N.C. 574, 579 (1988)).[2] Where overwhelming independent evidence of guilt exists—including a written confession—the error does not rise to the level of "substantial and irreparable prejudice." *Id*. at 337. In *Reber*, our Supreme Court clarified the following three-part test:

> First, the defendant must show that a fundamental error occurred at trial. Second, the defendant must show that the error had a probable impact on the outcome, meaning that absent the error, the jury probably would have returned a different verdict. Finally, the defendant must show that the error is an exceptional case that warrants plain error review, typically by showing that the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Reber*, 386 N.C. at 158 (quotations omitted). To show plain error, a "defendant must show not only that error occurred, but that absent the error, in light of that remaining evidence, the jury *probably* would have reached a different verdict." *Id*. at 163 (quotation omitted; emphasis added). *Reber* clarified that the second prong's "probable impact" standard requires the possibility of a different verdict be "significantly more likely than not." *Id*. at 159; *see Lawrence*, 365 N.C. at 518. Put differently, it must be "almost certain[ ]" or "doubtless" that the jury would have

---

[2] The prejudice analysis under *Lynch* remains fact-specific. Where the record includes no confession or direct evidence, a prospective juror's comment about incarceration may more readily create "substantial and irreparable prejudice." *Id*. Here, however, the confession distinguishes the case from *Bruer*.

4

reached a different verdict. *Reber*, 386 N.C. 153, 159.

Here, other trial evidence corroborated Defendant's written confession. Even if the trial court had addressed the detention officer's remark with a curative instruction, it is not reasonably probable that the jury would have acquitted the Defendant. Extending *Bruer* to these circumstances would effectively create a *per se* rule mandating mistrials whenever a venire member references incarceration and the trial court declines to provide a correcting instruction, even when the defendant has confessed in writing to the very crime charged. Such an extension is unwarranted and would transform any inadvertent juror reference to prior incarceration into automatic reversible error, regardless of the strength of the State's case and the trial court's assessment of prejudice. That result extends *Bruer* beyond its reasoning and undermines *Lynch*'s requirement that prejudice be substantial and irreparable.

This Court's decision in *Carr* further reinforces this principle. In *Carr*, this Court emphasized deference to the trial judge's superior vantage point in assessing whether juror remarks created actual bias. 229 N.C. App. at 584–85. The trial court here, having observed the prospective juror's tone and demeanor, determined that no incurable prejudice existed. After thoughtful consideration and consultation with counsel, the trial judge exercised discretion in determining that a curative instruction would have drawn undue attention to the prospective juror's comment. In the trial court's view, repeating or emphasizing the remark risked amplifying its prejudicial effect on the remaining jurors rather than mitigating it. I would accord weight to that

5

thoughtful and deliberative determination rather than adopting a *per se* rule that treats all such remarks as creating automatically reversible error.

For these reasons, I respectfully dissent.